AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| INFORMATION CONCERNING CELLULAR TELEPHONE (937) 430-7802 | ) ) ) | MICHAEL J. NEWMAN |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |
| 21 USC s. 843(b) | use of telephone communication facility |

The application is based on these facts:

See Attached Affidavit of Lauren Wagner

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Lauren Wagner, Special Agent of the DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/9/19

_____
*Judge's signature*

City and state: Dayton, Ohio

Michael Newman, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE ASSIGNED CALL NUMBER (937) 430-7802 IMSI 310410214943227 | Case No. _____ **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Lauren Wagner being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number:

   a. (937) 430-7802, registerd to Will Smith, with an address of 2809 Salem Avenue, Dayton, Ohio (hereinafter "**Target Telephone**"). The **Target Telephone**'s service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, Florida, 33408. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      I, Lauren Wagner, am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation.

3.      Your Affiant has been employed as a Special Agent by the United States Department of Justice, DEA, since September 2017, and is currently assigned to the DEA Detroit Division Dayton Resident Office, Group D-46.  Prior to your Affiant's employment with the DEA, your Affiant served as a Criminal Investigator for the New York State Department of Taxation and Finance Criminal Investigations Division, Cigarette Strike Force from September 2013 to August 2017 wherein your Affiant has investigated financial crimes to include; money laundering, structuring habits, and cash smuggling.  Your Affiant has interviewed numerous subjects/defendants involved in and/or arrested for tax and drug violations and has participated in several joint interagency federal and state investigations.  In September 2017, your Affiant reported to DEA Basic Agent Training in Quantico, Virginia.  In January 2018, your Affiant completed the 19 week Basic Agent Training Academy at the DEA Justice Training Center in Quantico, Virginia.  While attending Basic Agent Training, your Affiant received instruction on topics including narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, current trends/patterns involving the distribution of narcotics, as well as other areas of drug enforcement.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841; and 21 U.S.C. § 843(b) have been committed, are being committed, and will be committed by Crawford BOGLE and others known and unknown to Affiant.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and

2

will lead to the identification of individuals who are engaged in the commission of these offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

5.      This investigation is currently targeting a Drug Trafficking Organization (herein after referred to as "DTO") that collects, transports, and distributes bulk United States Currency (hereafter referred to as "USC") that represent the proceeds of drug trafficking activity.  As detailed more fully below, I am aware that Crawford BOGLE ("BOGLE") serves an integral role in this DTO and distributes bulk amounts of fentanyl and methamphetamine on its behalf in the Dayton, Ohio area. I am also aware that BOGLE's nephew, Savon POPE ("POPE"), works with BOGLE in selling drugs in the city of Dayton, Ohio.

6.      BOGLE has a history of drug trafficking activity.  On or about October 2013, he pleaded guilty to a federal drug charge in the United States District Court for Southern District of Ohio and ultimately received a 70 month term of imprisonment in that case.  During the investigation of that matter, law enforcement recovered quantities of cocaine, crack cocaine, and marijuana.  BOGLE has additional contacts with the criminal justice system, including: burglary, bribery, menacing, possession of drugs, possession of cocaine, permitting drug abuse, and possession of drug paraphernalia.

7.      Between the Fall of 2018, and continuing up to and including August of 2019, a DEA confidential source ("CS") provided information to your Affiant regarding the drug trafficking activiites of POPE.  The CS stated that POPE has been selling bulk quantities of fentanyl and methamphetamine in the Dayton, Ohio, area, and is being supplied through a Hispanic source of supply. The CS has provided information during past investigations, through 2017 and 2018, that led to multiple arrests as well as the seizure of bulk amounts of fentanyl and

3

methamphetamine.  The CS is believed to be truthful and credible based on past information and current information that has been corroborated by law enforcement.  The CS told investigators that POPE was with BOGLE in August of 2019, at a location in Trotwood, Ohio. The CS stated that POPE gave the CS the **Target Telephone** as his contact number.

8.      POPE has been named as a target in several previous federal and state cases. Pope was arrested during a search warrant executed in September 2011 wherein quantities of cocaine, crack cocaine, heroin, and marijuana were recovered.  Further, POPE has a criminal history that includes convictions for disorderly conduct, tampering with evidence, and possession of drugs.  POPE has been arrested for felony possession of drugs, domestic violence, and contempt of court.

9.      On or about July 29, 2019, the Honorable Walter H. Rice, United States District Court Judge, authorized the interception of wire and electronic communications over BOGLE's phone – namely (937) 610-8200.  Pursuant to that order, law enforcement has intercepted BOGLE on that phone since on or about July 30, 2019.  Since the start of interception, law enforcement has monitored several calls involving suspected drug trafficking activity.

10.      For instance, during interception of BOGLE's (937) 610-8200 number, investigators intercepted a call from a phone number believed to be used by POPE,  (937) 654-8642.  Investigators believe that this phone is used by POPE based voice comparisons from known POPE conversations that were previously recorded.  On August 3, 2019, at approximately

4

12:05 p.m., BOGLE, using (937) 610-8200, communicated with POPE, using phone number (937) 654-8642. The conversation ensued as follows: [1]

BOGLE:     Put something on it.

POPE:      Hell yeah, we both wanna make a couple dollars.

BOGLE:     Yeah.

POPE:      It's gonna be back [U/I] the chunk and shit?

BOGLE:     Shit park, yeah, park or something. The other one (1) be junk. It might be a lil' bit of shake at the bottom, that ain't, that's reopened.

POPE:      [U/I].

[VOICES OVERLAP]

BOGLE:     I ain't even wanna even play with that, that cut. I might as well tho shit.

POPE:      Let me, let me [STAMMERS] [U/I] let me top that can, and get it on deck. I wanna know how you puttin' that shit together. I [U/I] go done that. Like, I'm gonna get with the nigga and call you.

BOGLE:     Okay.

POPE:      Bye.

11.     Based on my training and experience, I believe that BOGLE and POPE are discussing cutting or diluting drugs to make more money. When BOGLE says "[p]ut something on it" and "cut," he is referring to mixing a substance with drugs to increase the amount of product to be sold. When POPE says, "[h]ell yeah, we both wanna make a couple dollars," he is referring to the increased profit that can be made by cutting the drugs.

_____

[1] The transcription of the conversation is preliminary in nature. "U/I" is used to refer to unintelligible portions of the call. "UF" is used to refer to an unidentified female.

12.     On or about August 6, 2019, at approximately 3:18 p.m., BOGLE, used (937)

610-8200 to contact the **Target Telephone**, and DEA intercepted the ensuing conversation

between these numbers.  DEA believes the **Target Telephone** is also used by POPE based the

the information provided by the CS, as discussed in paragraph 7, and based on voice

comparisons from known POPE conversations that were previously recorded.   The conversation

ensued as follows:

| | |
|---|---|
| BOGLE: | [ASIDE: MUMBLES: [U/I].] |
| POPE: | Hello? |
| BOGLE: | What's up, boy? |
| POPE: | What up? |
| BOGLE: | Tell me. |
| POPE: | Yeah, bruh. |
| BOGLE: | What they talkin' 'bout? |
| POPE: | Nah, they ain't say shit [U/I].  Lyin' ass niggas.  Actin' like you goin' to get sumin' in the mornin' .  [PAUSE] You said what? |
| BOGLE: | [ASIDE: Please call me with the confirmation.  [U/I].] |
| | [PAUSE] |
| | [STATIC] |
| POPE: | His bitch ass out there bullshittin'. |
| | [BACKGROUND: RINGING] |
| BOGLE: | Where at? |
| POPE: | Where're you at? |
| BOGLE: |  At Lowe's [PH].  [ASIDE: and I paid a hundred (100) of it.] |
| | [BACKGROUND: UF: On the card?] |
| BOGLE: | [ASIDE: Yeah.]  Okay, bro'. |
| POPE: | Whatchu' about to do? |

6

[BACKGROUND: RINGING]

BOGLE:      I'm gonna try to get, try to get this whatchamacallit ready.

[PAUSE]

POPE:      Tryina' get on this nigga's ass, boy, see what the fuck he gonna do to that bitch ass nigga. He gonna dribble or shoot, he gonna beat us or not. Go get back somewhere else.

[VOICES OVERLAP]

BOGLE:      Man… Whatchu' want, forty (40) for it? [BACKGROUND: NOISE] [PAUSE] You want forty (40) for it?

POPE:      [EXHALES] You was sayin' what?

BOGLE:      You want forty (40) for it?

POPE:      I just wanted to do a deal today. You told me it'd been in the [U/I].

BOGLE:      That shit, what the- [ASIDE: Thank you.] Huh?

POPE:      Shit, that motha' fucka' so far away. If we ain't get on that shit in the mornin', shit, we, we gonna be in tr-, they don't close 'til seven (7:00).

BOGLE:      I understand that.

POPE:      Could leave at five (5:00), nigga, long as he give us the okay.

[BACKGROUND: NOISE]

BOGLE:      He'll give us the okay, the car ain't got nothin'.

POPE:      I just called them. They said it's only a motha' fuckin' [U/I] anyway, bruh'. Call him and ask him what's up. Or you want me to do it?

BOGLE:      Huh? What' s up? Huh?

[BACKGROUND: NOISE]

[BACKGROUND: VOICE]

[PAUSE]

BOGLE:      [ASIDE: You can put the wood on slab.] God damnit, sumin' bit the fuck outta me on my leg. Lemme call you right back, bruh'.

13.      Based on my training and experience, I believe that POPE, using the **Target**

**Telephone**, is discussing a money transaction with BOGLE involving drug proceeds. Where

7

POPE says "I just wanted to do a deal today" he is discussing the potential transaction. I am aware that on August 8, 2019, two days after this call, law enforcement on surveillance observed BOGLE and POPE together after BOGLE had purchased a Dodge Challenger. Agents later intercepted calls in which BOGLE stated he purchased the Challenger for someone else. Based on calls and surveillance agents believe the car was purchased for POPE using drug proceeds.

14.     Based on my training and experience, I know that individuals involved in the drug trade frequently utilize multiple phone numbers to conduct drug trafficking activity. These individual alsl frequently utilize fictitious names and/or do not provide a real name and address for the phone subscriber information in an attempt mask their identity from law enforcement. Here, the **Target Telephone** is subscribed to Will Smith, the name of a famous actor, with an address of 2809 Salem Avenue, Dayton, Ohio. Based on my investigation, I believe the address associated with the phone to be a false address.

15.     Based on my training and experience, I believe the location of the phone will assist agents in revealing the role played by the user of **Target Telephone** in drug trafficking activity, aid law enforcement determine the scope and members of BOGLE's DTO, and aid law enforcement in revealing locations where drugs or drug proceeds are stored.

16.     Based on my training and experience, I know that AT&T can collect cell-site data about the **Target Telephone**. AT&T can also collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available. I know that this location information will assist law enforcement in identify the user of the **Target Telephone**. Additionally, the location information may also lead law enforcement to locations at which the user of the **Target Telephone** is storing or selling illegal drugs.

8

Additionally, this information will assist law enforcement observe potential meetings between the user of the **Target Telephone** and other individuals with whom he is trafficking narcotics, *i.e.*, coconspirators.

## AUTHORIZATION REQUEST

17.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

19.     I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T.  I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **Target Telephone** on

9

AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

20.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

21.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Lauren Wagner, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on August 9, 2019.

HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (937) 430-7802, registerd to Will Smith with an address of 2809 Salem Avenue, Dayton, Ohio ("**Target Telephone**"), whose service provider is AT&T, 11760 U.S. Highway 1, Suite 600 North Pam Beach, Florida, 33408.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of AT&T.

**ATTACHMENT B**

**Particular Things to be Seized**

All information about the location of **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimPOPE of interference with AT&T's services, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).

2